LAWRENCE WOOD *vs.* COMMISSIONER OF CORRECTION.

Suffolk.    December 7, 1972. — February 12, 1973.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Imprisonment.  Statute,* Construction.  *Words,* "All deductions."

The words "all deductions" in the provision of G. L. c. 127, § 83B, as amended by St. 1955, c. 770, § 47, that "If a prisoner escapes . . . from a prison camp all deductions from the sentence he is then serving shall be thereby forfeited" apply only to deductions earned by the prisoner before his escape, not to deductions earned after his return to custody. [80–84]

PETITION filed in the Superior Court on January 12, 1971.

The case was heard by *Kalus,* J.

*Robert Greco* (*Francis John Stolarz* with him) for the petitioner.

*James X. Kenneally,* Assistant Attorney General (*Patricia M. Dinneen* with him) for the respondent.

TAURO, C.J.   The petitioner appeals from a Superior Court final decree on a bill for declaratory relief seeking to establish that G. L. c. 127, § 83B, does not require forfeiture of prospective "good conduct deductions." [1]

The following pertinent facts appear from the record before us.   The petitioner was originally found guilty of armed robbery and sentenced to a twenty-five to thirty year term.   On July 1, 1963, the petitioner, while serving his sentence, escaped from a prison camp at Monroe, Massachusetts.   He was apprehended and returned to

---

[1] The petitioner waived that part of his petition seeking a writ of mandamus.

custody on July 5, 1963.[2]  As of the date of his escape, the petitioner had earned 765 days of good conduct deductions as allowed by G. L. c. 127, § 129.  From the date of his return to custody until December 31, 1970, the petitioner could have been entitled further to 1,105 days of good conduct deductions.  However, the Commissioner of Correction, acting pursuant to G. L. c. 127, § 83B, ordered that all of the petitioner's good conduct deductions, both those earned before the escape and those potential prospective deductions for time served after the escape on the original twenty-five to thirty year sentence be forfeited because of the petitioner's escape from the prison camp.  This administrative interpretation of § 83B's mandate was upheld by the Superior Court judge's final decree which held that "[a]s a matter of statutory construction, no distinction may be drawn under § 83B between earned and prospective good conduct deductions."  Thus, the sole issue presented by this appeal is the correctness of the judge's ruling.

At the time of the petitioner's escape, G. L. c. 127, § 83B,[3] provided that "[i]f a prisoner escapes or attempts to escape from a prison camp all deductions from the sentence he is then serving shall be thereby forfeited."  The Department of Correction has interpreted the words "all deductions" to encompass not only all the deductions that the inmate has earned up until the time of the escape but also any deductions he may earn on his return to custody.  The commissioner argues that since the statute refers to "all deductions" and not just to "all previously earned deductions," the statutory language on its face clearly indicates that no deductions whatever can be made from the term of imprisonment of an escapee from a prison camp.  However, the statutory language is not that clear.  If the use of the word "deductions" refers only to earned deductions, then the language "all deduc-

[2] For his escape and for other crimes committed, the petitioner was sentenced on January 29, 1964, to a four to five year term from and after his prior sentence.

[3] Inserted by St. 1951, c. 755, as amended by St. 1955, c. 770, § 47.

tions . . . shall be thereby forfeited" would support the petitioner's construction, rather than the respondent's. Section 83B's ambiguous reference to "all deductions" is not clarified by the statute's failure to refer only to "previously earned deductions" because the statute could just as well have read "all possible deductions shall thereby be forfeited" in order to clarify its intent to include prospective as well as earned deductions.[4]

Thus, since we have an ambiguous penal statute to interpret (see *Patrick* v. *Commissioner of Correction*, 352 Mass. 666, 669), we must construe it strictly (*Davey Bros. Inc.* v. *Stop & Shop, Inc.* 351 Mass. 59) to prevent its extension by implication unless the Legislature made this intent manifest. See *Melody* v. *Reab*, 4 Mass. 471, 473.

However, there is nothing before us that clearly establishes a manifest legislative intent to have § 83B's forfeiture of good conduct deductions apply prospectively. To the contrary, an analysis of the legislative history and purpose of the various provisions under c. 127 which allow good conduct deductions supports the petitioner's claim that § 83B forfeits only those deductions which the prisoner has earned before his escape.

Prior to its amendment in 1963, c. 127, § 129's provision for forfeiture of good conduct deductions was similar in form to § 83B. Chapter 127, § 129, read in part: "If during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, *all deductions hereunder from the former sentence of imprisonment of such prisoner shall be thereby forfeited*" (emphasis supplied). In

---

[4] In many jurisdictions where a State has intended to take away deductions prospectively, the statute expressly clarifies its intent. See Deering's Penal Code of California § 2923. "[F]orfeiture of any or all time credits theretofore earned by or allowed to him before the commission of such offense *and/or all time credits which he may thereafter earn* . . ." (emphasis supplied). Ind. Sts. (1956) 13—117, "the warden . . . shall have the power to deprive such inmate of any portion or all of the good time *earned and to be earned*" (emphasis supplied).

interpreting this language as it applied to an escape from a prison [5] occurring before the 1963 amendment, the Attorney General concluded, "The prisoner in situation #2 must lose any deductions *accumulated* under his prior sentence" (emphasis supplied). Rep. A. G., Pub. Doc. No. 12 (1965) 187–189. The use of the word "accumulated" clearly indicates deductions which the prisoner has earned up to the point of his escape. This interpretation is further supported by the fact that the Legislature used the term "forfeited" to denote the loss of earned good conduct deductions in another part of § 129, as amended, which reads, "If a prisoner violates any rule of his place of confinement, the commissioner of correction . . . shall decide what part, if any, of such good conduct deduction from sentence or sentences shall be forfeited by such violation, and may likewise determine, in the event of the prisoner's subsequent good conduct, whether any or all of such deduction shall be restored." Deductions could not be "restored" unless they had already been "earned."

Furthermore, when the Legislature intended to affect prospective potential good conduct deductions, it has expressly stated its intent in clear and unambiguous language. Thus, when the Legislature amended c. 127, § 129, in 1963 to apply to both earned and prospective deductions from the new sentence, it specifically replaced the word "forfeited" which was in the original text of the

---

[5] General Laws c. 127, § 129's forfeiture applies to inmates who escape from any correctional institution. General Laws c. 127, § 83B, applies only to inmates who escape from prison camps. The commissioner argues that "§ 129 has no operational effect on the interpretation of § 83B." This claim rests on the mistaken assumption that since § 129 and § 83B have separate functions, they cannot be compared with each other in terms of their operational language. However, we expressly noted in *Gregoire, petitioner*, 355 Mass. 399 (1969), that the two statutes overlapped in some respects and their separate functions were not inconsistent with each other. Thus, since both § 129 and §83B of c. 127 concern the forfeiture of good conduct deductions, sound principles of statutory construction dictate that interpretations of provisions having identical language and dealing with the same subject be uniform. See *Webster* v. *Board of Appeals of Reading*, 349 Mass. 17.

amendment (see 1963 House Doc. No. 21) with the language "he *shall not be entitled* to any deductions" (emphasis supplied). St. 1963, c. 535. We conclude from the legislative history of this parallel provision that if the Legislature had intended by its passage of § 83B to deprive inmates of prospective as well as earned deductions, it would have used clear and appropriate language to express this intent.

Finally, we cannot accept the commissioner's construction of the statute because its implementation would frustrate the Legislature's purpose in granting good conduct deductions. The commissioner's interpretation would destroy the incentive for good behavior for the inmate who is returned to prison, after his escape, to complete his initial sentence. Construing § 83B to forfeit only earned good conduct deductions saves the deterrent purpose of § 83B without destroying any incentive for good behavior in the future. The petitioner's loss of over two years of earned good time deductions in the instant case as well as the sentence imposed for the crime of escape, see G. L. c. 268, § 16, provides sufficient punishment for his escape, thereby satisfying § 83B's purpose without frustrating § 129's purpose of providing an incentive for good behavior on the prisoner's part. See *Opinion of the Justices*, 13 Gray 618, 621. Therefore, we construe c. 127, § 83B's mandate that "all deductions from the sentence he is then serving shall be thereby forfeited" not to apply prospectively.

The Superior Court judge based his decision in large measure on the commissioner's argument that the additional penalty imposed by the loss of prospective as well as earned good conduct deductions is needed in order to impose a stiffer penalty for escape from prison camps than from prisons. The judge said, "Inmates confined to prison camps are being afforded more lenient terms of imprisonment than are those confined to prisons. . . . The greater risk of escape involved in putting them in this position could not logically be justified were there not

reason to believe they would not violate this trust. The stiffer penalty for escape from a camp provides this reason."

The commissioner's contention rests on the mistaken assumption that an inmate who escapes from a prison camp will not receive a stiffer penalty than the prisoner who escapes from a correctional institution unless § 83B is construed to forfeit prospective as well as earned deductions from the original sentence being served. However, regardless of how we construe § 83B, the inmate who escapes from a prison camp could in fact receive a stiffer penalty than the prisoner who escapes from a correctional institution because of the overlapping nature of § 83B's and § 129's forfeiture provisions. Both statutes may be applied to an inmate who escapes from a prison camp, whereas only § 129 applies to a prisoner who escapes from a prison. Under § 83B, the inmate forfeits all his deductions from the sentence he is serving at the time of the escape from the prison camp. Under § 129's provision which punishes any offence by any prisoner or camp inmate including escape, for which a later conviction is obtained, the escapee forfeits all possible deductions from the *new* sentence or sentences. See *Gregoire, petitioner,* 355 Mass. 399. See Smith, Criminal Practice and Procedure, § 1621. Thus, regardless of how we construe § 83B, the escapee from a prison camp may lose good conduct deductions from both the original sentence he was serving at the time of his escape and from the new sentences stemming from his escape. The application of both statutes to an escapee from a prison camp would be justified in those cases where § 83B's application alone would result only in an insignificant loss of good conduct deductions because the prisoner had escaped at the beginning of his term.

The Superior Court judge's final decree is reversed. A new decree is to be entered declaring that c. 127, § 83B's forfeiture of good conduct deductions applies only to those deductions earned by the prison camp inmate before his escape.                    *So ordered.*