### Nancy L. HANOVER
### v.
**Charles NORTHRUP, Superintendent of Schools, Shepaug Valley Regional School District No. 12, Robert McDonald, Edward Tierney, Edward Went, Howard Bronson, Edward Meeker, William Napolitano, Edith Kinney, and Carol Cook, Acting Chairman and Members, Board of Education, Shepaug Valley Regional School District No. 12.**

### Civ. No. 13772.

United States District Court,
D. Connecticut.

May 1, 1970.

---

Ira B. Grudberg, Jacobs, Jacobs, Grudberg & Clifford, New Haven, Conn., for plaintiff.

Walter M. Pickett, Jr., Larkin & Pickett, Waterbury, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO DISMISS

BLUMENFELD, District Judge.

In thousands of schools across the country, tens of thousands of teachers lead hundreds of thousands of students in the primary grades in a recital of the Pledge of Allegiance,[1] at the commencement of every school day. This case, brought under the Civil Rights Act, 42 U.S.C. § 1983, presents the question of the legal consequences to a teacher who refuses to comply with that traditional practice.

Plaintiff, Mrs. Nancy L. Hanover, has been a seventh and eighth grade school teacher at Booth Free School in Roxbury, Connecticut, since September 1968. On December 8, 1969, the defendant members of the Board of Education, at the instance of the new Superintendent of Schools, Charles Northrup, also a defendant herein, promulgated "Policy Identification 2-B" which directed: "The Salute to the Flag is to be part of each day's opening exercises in Grade K [kindergarten] through Grade 8." However, Mrs. Hanover had previously reached the conclusion that the Salute's final phrase, "with liberty and justice for all," was an untrue statement of present fact and "was not a pledge to work for something because it doesn't say that." (Tr. 27). Mrs. Hanover notified the school principal of her refusal to lead or recite the Pledge, and arranged for a student to lead the class in the Pledge, while she remained seated at her desk with her head bowed. Defend-

---

1. The official form of the Pledge of Allegiance is set forth at 36 U.S.C. § 172: "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all."

ant Northrup, on December 18, 1969, and subsequently, ordered Mrs. Hanover to lead the class in the Pledge, which she refused to do. Regarding her refusal as insubordination and fortified by an official statement from the State Commissioner of Education, he suspended Mrs. Hanover from her teaching duties, with pay, on February 10, 1970. On April 14, 1970, the Board of Education held a hearing to consider the termination of plaintiff's contract on the sole ground of "insubordination" in the failure to obey defendant Northrup's order. On April 28, 1970, the Board voted to terminate the contract.

Plaintiff seeks an order enjoining defendants from terminating her contract, and requiring them to reinstate her to her teaching duties pending final disposition of this case. Her claim is that the termination of her contract deprives her of her first amendment right to free expression and her fourteenth amendment rights to due process and equal protection.

Federal jurisdiction of her claim is conferred by 28 U.S.C. § 1343(3), the jurisdictional counterpart of 42 U.S.C. § 1983. *Cf.* Eisen v. Eastman, 421 F.2d 560, 562 (2d Cir. 1969). *See* Tinker v. Des Moines Independent Community School Dist., 258 F.Supp. 971 (S.D.Iowa 1966), aff'd, 383 F.2d 988 (8th Cir. 1967), rev'd, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Sheldon v. Fannin, 221 F.Supp. 766 (D.Ariz.1963).

Recent Supreme Court and lower federal court opinions reflect an increasing measure of protection for the exercise of first amendment rights in the schoolhouse. *E. g.,* Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Frain v. Baron, 307 F.Supp. 27 (E.D.N.Y.1969). As the Court in *Tinker* held:

"First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." 393 U. S. at 506, 89 S.Ct. at 736.

*See also,* Epperson v. Arkansas, 393 U.S. 97, 107, 89 S.Ct. 266, 272, 21 L.Ed.2d 228 (1968) ("It is much too late to argue that the State may impose upon the teachers in its schools any conditions that it chooses, however restrictive they may be of constitutional guarantees.").

There is no question but that Mrs. Hanover's refusal to recite or lead recitation of the Pledge of Allegiance is a form of expression protected by the first amendment which may not be forbidden at the risk of losing her job. It does not matter that her expression took the form of silence. See Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). Nor is it relevant to inquire whether her expression is attributable to a doubtful grammatical construction of the Pledge of Allegiance or outright disagreement with it. First amendment rights of expression are fundamental to the preservation of an open, democratic society, since restriction on their exercise inhibits the debate by which society's values are set and its laws reformed to reflect prevailing opinion. *See* Kovacs v. Cooper, 336 U.S. 77, 89, 95–96, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (concurring opinion of Mr. Justice Frankfurter).

The Court in *Tinker, supra,* 393 U.S. at 509, 89 S.Ct. 733, clearly places on school authorities the burden of justifying restrictions of expression on either students or teachers. In assessing the state's asserted justifications, reference must be made to the Court's statement in *Barnette, supra,* 319 U.S. at 639, 63 S.Ct. at 1186, that freedom of expression is "susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect." Judge Judd, in a well-considered opinion in Frain v. Bar-

on, *supra*, 307 F.Supp. 27 (upholding the right of students to stay in their classrooms rather than go into the hall during the daily Pledge of Allegiance in which they did not participate), held that conclusory assertions in the defendants' affidavits of a real and present threat to the maintenance of discipline and fear of disorder would not support a finding of serious harm to school authorities. Nor is mere fear that disorder might occur sufficient justification for restriction on expression. *Tinker, supra*, 393 U.S. at 508, 89 S.Ct. 733. *See* Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963).

In the instant case, there was no suggestion that Mrs. Hanover's behavior resulted in any disruption of school activities, or that her behavior interfered with or denied the rights of other teachers or students. *See Barnette, supra*, 319 U.S. at 630, 63 S.Ct. 1178. On the contrary, Mrs. Hanover's testimony that she directed a student to lead the class in the Pledge, and that there were no discipline problems with the students as a result of her behavior, was uncontradicted.

It does not matter whether some of her students, who also refrained from recitation of the Pledge were persuaded to do so because of the plaintiff's conduct. "The First Amendment protects successful dissent as well as ineffective protests." Frain v. Baron, *supra*, 307 F.Supp. at 33.

In short, the plaintiff in refusing to lead recitation of the Pledge of Allegiance was participating in a form of expression restriction of which cannot be justified on any of the grounds so far advanced by the state.

On the basis of the foregoing, the court is satisfied that the plaintiff has a strong possibility of ultimate success on the merits, that she will suffer irreparable injury unless the defendants are enjoined and that the grant of a preliminary injunction will cause no appreciable harm to defendants. It is, therefore,

Ordered: (1) That the defendants' motion to dismiss be denied.

(2) That the case may not proceed as a class action pursuant to Fed.R.Civ.P. 23(b) (2).

(3) That defendants be enjoined during the pendency of this action from terminating their contract with plaintiff.

(4) That defendants immediately reinstate plaintiff to her teaching duties pending final disposition of this action.